UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                         :

HUA XUE,                               :
                                         :

                    Plaintiff,   :

                                         :

              -against-         :

                                       :

PETER T. JENSEN, MIN LU a/k/a MINDY  :
LU, THE JENSEN LAW FIRM, PLLC,   :
                                       :

                Defendants.  :
                                       :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___11/19/2020___

19-cv-1761 (VSB)

**OPINION & ORDER**

<u>Appearances</u>:

Christopher Scott Hinton
Hinton Law Firm
New York, NY
*Counsel for Plaintiff*

Anastasia P. Cordova
McGuire Woods LLP
New York, NY
*Counsel for Defendant Min Lu*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Plaintiff Hua Xue filed this action on February 25, 2019, (Doc. 1), and filed an Amended

Complaint on July 29, 2019, (Doc. 23), alleging seven causes of action arising from Defendants'

alleged fraudulent misrepresentations which induced Plaintiff into investing in a company as part

of her application for a green card through the EB-5 Immigration Investor Program.  The causes

of action include professional negligence/legal malpractice, breach of fiduciary duty, fraud,

fraudulent concealment, negligent misrepresentation, civil conspiracy, and unjust enrichment.

      Before me are the motions to dismiss the Amended Complaint of Defendants Peter T.

Jensen ("Jensen"), the Jensen Law Firm, PLLC (the "Jensen Law Firm") and Min Lu ("Lu").

(Docs. 24, 27.)  Because I find that this court does not have personal jurisdiction over Defendant Lu, Defendant Lu's motion to dismiss is GRANTED.  Plaintiff's causes of action against Jensen and the Jensen Law Firm are also dismissed because (1) the causes of action for legal malpractice and breach of fiduciary duty are time barred, and (2) Plaintiff does not plausibly allege causes of action for fraud and fraudulent concealment, negligent representation, civil conspiracy, and unjust enrichment.  Accordingly, the motion to dismiss the Amended Complaint of Defendants Jensen and the Jensen Law Firm is GRANTED.

## I.    **Factual Background**[1]

Plaintiff Hua Xue is a citizen of China who, in December 2010, made an investment of $500,000 in the EB-5 Immigration Investor Program ("EB-5 Program").  (Am. Compl. ¶¶ 12.)[2] The EB-5 Program is administered by the United States Citizenship and Immigration Services ("USCIS"), and allows foreign nationals seeking green cards "to invest a requisite amount of either (a) $1,000,000 USD; or (b) a reduced amount of at least $500,000 USD, provided that the investment is made in a Targeted Employment Area.  A Targeted Employment Area [] is a 'high unemployment' or 'rural area' in a new commercial enterprise whereby the EB-5 investment is used to create or preserve at least 10 full-time jobs, directly or indirectly depending on EB-5 category, for qualified U.S. workers."  (*Id.* ¶ 16.)  If the conditions of the investment are met, the foreign national will receive a permanent green card.  (*Id.*)

---

[1] The following facts are taken from Hua Xue's Amended Complaint, (Doc. 23.), and Min Lu's Declaration in Support of Defendant's Motion to Dismiss Under Federal Rule 12(b)(2) ("Lu Decl.", "Lu Declaration", Doc. 29).  I assume the factual allegations set forth in the Amended Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to the allegations in the Amended Complaint should not be construed as a finding as to their veracity, and I make no such findings.  With regard to the Lu Declaration, a court may consider materials outside the pleadings when deciding a motion to dismiss for lack of personal jurisdiction.  *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

[2] "Am. Compl." refers to Plaintiff Hua Xue's Amended Complaint.  (Doc. 23.)

Defendant Min Lu, a/k/a Mindy Lu, is a resident of China, and has lived there since 2010. (Am. Compl. ¶ 12; Lu Decl. at 1.)[3]  Mindy Lu is married to Defendant Peter Jensen, but they have not lived together as husband and wife since 2010.  (Lu Decl. at 3.)  Defendant Lu visits her children in New York two or three times a year.  (*Id.*)  Defendant Lu has "a partial interest in several passive investments in real estate properties located in New York" that she does not manage, and that do not require her presence in New York.  (*Id*. at 2.)

Defendant Peter Jensen ("Jensen") is an attorney residing in New York, and admitted to practice law in New York.  (Am. Compl. ¶ 13.)  Jensen is married to Defendant Mindy Lu, and is the founder and principle of corporate Defendant the Jensen Law Firm, a law firm operating in the state of New York.  (Am. Compl. ¶¶ 13, 15.)

ALTe, LLC,[4] ("ALTe") is a designated commercial enterprise that is qualified by USCIS as an entity in which an EB-5 petitioner can invest.  (*Id.* ¶ 23).  Green Detroit Regional Center ("GDRC") is a regional center that obtained qualification for ALTe to be a qualifying Job Creating Entity[5] under the EB-5 program, and structured the promotion and oversight of ALTe. (*Id.* ¶ 25).  SMS Investment Group, LLC ("SMS") is an investment fund used by EB-5 investors to transfer the funds to a designated commercial enterprise, like ALTe, and in return receive securities in a target company.  (*Id*., ¶ 24.)

Plaintiff alleges that Defendants Lu and Jensen solicited her investment in the EB-5 program, and into using SMS as an investment vehicle to purchase shares in ALTe, LLC, a

---

[3] "Lu Decl." refers to Min Lu's Declaration in Support of Defendant's Motion to Dismiss.  (Doc. 29.)

[4] ALTe, LLC, was subsequently reorganized as ALTe Powertrain Technologies, Inc., and presently Alte Technologies, Inc.  (*Id.* 1 n.1)

[5] "Job Creating Entity" is used in the Amended Complaint but is not defined.  However, presumably Job Creating Entity is a reference to "a new commercial enterprise whereby the EB-5 investment is used to create or preserve at least 10 full-time jobs, directly or indirectly depending on EB-5 category, for qualified U.S. workers."  (*See* Am. Compl. ¶ 16.)

developer and manufacturer of hybrid and electric vehicle powertrains.  (Am. Compl. ¶¶ 31–39,

23.)  Lu and Jensen received a commission and service fees for Xue's investment.  (*Id.* ¶¶ 8, 36.)

However, unbeknownst to Xue, ALTe was a failing company that did not have the capacity to

manufacture its products, and contrary to its marketing materials had (1) not sold $240 million in

products nor (2) received United States government funding or support.  (*Id.* 38.)  Because of

Lue and Jensen's misrepresentations regarding ALTe, Xue invested in ALTe through the EB-5

program, and is left holding worthless shares in ALTe.  (*Id.* ¶ 69.)

According to Xue, in addition to the misrepresentations about ALTe, Lu worked as an

attorney and a securities broker.  Plaintiff alleges that Defendant Lu worked (1) as an attorney—

although she was not admitted in the United States as an attorney—(2) as a securities broker-

dealer—although she was not registered as a broker in State of New York or with an appropriate

United States regulatory body—and (3) as a principle and officer of Strategic Alliance

International Corporation ("Strategic Alliance"), an unregistered broker-dealer that assists with

locating Chinese financing for United States based projects.  (Am. Compl. 14, 28.)  Defendant

Lu allegedly operated her business with her husband through the Jensen Law Firm.  (*Id*. ¶ 14.)

Xue would not have made her investment in ALTe, at least in part, had she known of Lu's lack

of qualifications.  (*See id.* ¶ 51, 68.)

In 2010, Plaintiff Xue was introduced to Lu and Jensen as a prospective EB-5 investor.

Xue learned of the potential ALTe investment through Lu and Jensen.  (*Id*. ¶ 29.)  Lu and Jensen

represented that they specialized in EB-5 investments, and marketed the ALTe investment to

Xue.  (*Id.* ¶ 30–31.)  The marketing materials made material misrepresentations about ALTe.

(*Id.*  ¶¶ 31, 38.)  Lu orally reaffirmed to Xue the false information in the ALTe marketing

materials.  (*Id*. ¶ 34.)  Xue spoke with Lu about the investment by telephone on a number of

occasions, including in March 2014, July 2014, and June 2015.[6]  (Id. ¶ 39.)

Lu signed the Subscription Agreement between Xue and SMS as a witness but not as a party.  (Lu Decl. ¶ 9, Ex. 1 at 4.)[7]  As part of the Subscription Agreement, Xue represented and confirmed that (1) "Martin Lawler, an attorney practicing in San Francisco, may represent [her] in [her] application for permanent resident status (to obtain a 'green card') based on [her] immigration investment", (2) that she had "not relied upon Mr. Lawler for any financial or any other non-immigration legal advice in connection with my decision to subscribe for and commit my investment in SMS", and (3) that she understood "that [she] [could] retain an independent attorney (or other professional advisors as [she] deem[ed] appropriate) for any and all matters connected to [the] investment, including filing [he] immigration petitions."  (Lu Decl., Ex. 1 at 3.)

Lu states that she never conducted business with Plaintiff Xue when she was in New York, and has never spoken to Xue or met with Xue while Lu was in New York.  (Lu Decl. at 2.) Lu maintained and utilized an email address with the predecessor law firm to the Jensen Law Firm, from which she conducted business with Xue.[8]  (Am. Compl. ¶ 44.)

Jensen and the Jensen Law Firm acted as a broker-dealer in connection with the sale of securities to Plaintiff, despite the fact that neither Jensen nor the Jensen Law Firm were registered to act as a broker-dealer in the State of New York or with an appropriate United States regulatory body.  (Am. Compl. ¶ 15.)  As part of the solicitation materials, Jensen signed a letter

---

[6] Xue claims that Lu was in New York for each of these telephone calls, but Lu denies being in New York, and submitted bank statements demonstrating that she was "in Beijing on those dates and withdrew money in Beijing from [her] account." (Lu Decl., at 2; Ex.  2.)  Xue does not claim that Lu was in New York for the other phone calls and meetings in which Xue and Lu both participated.  (See e.g., Am. Compl., ¶ 46.)

[7] Page number references to Lu Decl., Ex. 1 are to the numbers generated by the court's electronic docketing system.

[8] Lu claims this email address had been discontinued prior to her interactions with Xue.  (Def. Mem., at 9 n. 3.)

in his capacity as Vice President of SMS which stated that "based on ALTe's financial projections, SMS forecasts up to 2 percent return" investment; however, that return never materialized for Xue.  (*Id.* ¶ 33.).  "[T]he representations made by Defendants were false and misleading, and failed to disclose material information necessary to otherwise make the representations true and accurate."  (*Id.* ¶ 38.)

## II.   <u>Procedural History</u>

Plaintiff filed the initial Complaint on February 25, 2019.  (Doc. 1.)  Defendants Min Lu and Jensen & Jensen Development (USA) Inc. filed a motion to dismiss on July 8, 2019.  (Doc. 15.)  On July 11, 2019, I issued an Order directing Plaintiff to either amend the complaint or file an opposition to the motion to dismiss.  (Doc. 22.)  Plaintiff filed the Amended Complaint on July 29, 2019.[9]  (Doc. 23.)  On August 12, 2019, Defendants Jensen and the Jensen Law Firm filed their motion to dismiss, a declaration in support of that motion with exhibits, and a memorandum of law.  (Doc. 24-26.)  On that same date, Defendant Lu filed her motion to dismiss, declarations in support of that motion each with exhibits, and a memorandum of law. (Doc. 27-30.)  On September 26, 2019, Plaintiff filed a memorandum of law and three declarations in opposition to both motions to dismiss.  (Doc. 34-37.)  On October 25, 2019, Defendants Jensen and the Jensen Law Firm, and Defendant Lu, filed replies.  (Docs. 38, 39, respectively.)  On October 29, 2019, I denied Defendant Lu's letter motion for oral argument. (Doc. 41.)

---

[9] Jensen & Jensen Development (USA) Inc. was not named as a defendant in the Amended Complaint.

### III.   Personal Jurisdiction as to Defendant Lu

#### A.  *Legal Standard*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 93–102 (1998)).  When a defendant moves for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).  On a motion under Rule 12(b)(2), when the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a *prima facie* case."  *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  Under this standard, a plaintiff "must plead facts which, if true, are sufficient in themselves to establish jurisdiction as to each defendant."  *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 251 (S.D.N.Y. 2013) (internal quotation marks omitted).  "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *Whitaker v. Am. Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted).  Thus, a court may consider materials outside the pleadings when deciding a motion to dismiss for lack of personal jurisdiction.  *Hsin Ten Enter. USA, Inc.*, 138 F. Supp. 2d at 452.

In determining whether personal jurisdiction has been established, courts engage in a two-step analysis.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  First, district courts must determine if there is statutory jurisdiction, and

second, "[i]f there is a statutory basis for jurisdiction, the court must then determine whether . . .
extension of jurisdiction in such a case would be permissible under the Due Process Clause of
the Fourteenth Amendment." *Id.* When a court is sitting in diversity, the "breadth of a federal
court's personal jurisdiction is determined by the law of the state in which the district court is
located." *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014) (quoting *Thomas v.
Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).

In New York, courts may exercise either general or specific personal jurisdiction. N.Y.
C.P.L.R. §§ 301, 302. For general jurisdiction, a plaintiff's claims "need not arise out of
defendant's contacts with the forum state, but defendant's contacts must be substantial." *Bohn v.
Bartels*, 620 F. Supp. 2d 418, 425 (S.D.N.Y. 2007). With respect to specific jurisdiction a
plaintiff's claim must arise out of defendant's contacts with the forum state even if those contacts
are not substantial. *Id.* Further, a court may exercise specific jurisdiction over a non-domiciliary
who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1).

The exercise of specific jurisdiction—which "focuses on the relationship among the
defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal
quotation marks omitted), requires a two-step analysis, *see, e.g.*, *Licci ex rel. Licci v. Lebanese
Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). First, courts "evaluate the quality and
nature of the defendant's contacts with the forum . . . under a totality of the circumstances test."
*Id.* (internal quotation marks omitted). To determine whether sufficient minimum contacts exist,
"[t]he crucial question is whether the defendant has 'purposefully availed itself of the privilege
of conducting activities within the forum State, thus invoking the benefits and protections of its
laws, such that the defendant should reasonably anticipate being haled into court there.'" *Best
Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (quoting *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474–75 (1985)).  It is "insufficient to rely on a defendant's 'random,

fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff" with the forum to

establish specific jurisdiction.  *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at

475).  Second, if the defendant purposefully established minimum contacts with the forum, the

court must be satisfied that exercising jurisdiction comports with due process and "does not

offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945) (internal quotation marks omitted); *see also Straub*, 921 F. Supp. 2d at 252

(internal quotation marks omitted) ("If [minimum] contacts are found, the Court may assert

personal jurisdiction so long as it is reasonable to do so under the circumstances of the particular

case.").

## B. *Discussion*

With regard to jurisdiction, Plaintiff asserts in her Amended Complaint that there is

"diversity jurisdiction pursuant to 28.U.S.C. § 1332 in that Defendants are citizens or domiciled

in the State of New York, and Plaintiff is a citizen of a foreign state who is not domiciled in New

York.  In particular, Defendant Peter Jensen and Min Lu are citizens of the State of New York."

(Am. Compl. ¶ 9.)  Plaintiff also claims that "Lu interoperates her securities solicitation business

with her husband, Defendant Jensen, in New York, and, as a matter of course, refers clients to

Defendant Jensen and the Jensen Law Firm, and provides legal services on behalf of the Jensen

Law Firm for clients that she procures."  (*Id*. ¶ 14.)  For the reasons stated below, I find that

Plaintiff failed to allege specific facts sufficient to demonstrate general jurisdiction[10] or specific

---

[10] I recognize that "[a] plaintiff must establish [personal] jurisdiction with respect to each claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  However, because each of Plaintiff's claims stem from the same core allegation, and because Plaintiff has not sufficiently alleged an act that took place in New York, my personal jurisdiction analysis applies equally to each of Plaintiff's claims.  I note that Plaintiff herself does not attempt to distinguish her causes of action for purposes of asserting personal jurisdiction.

jurisdiction over Defendant Lu.

Under section 301, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301. "Section 301 traditionally applies to persons actually present in New York and to corporations doing business in New York, not occasionally or casually, but with a fair degree of permanence and continuity." *Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp 2d 648, 654 (S.D.N.Y 2013) (internal quotation marks omitted). Defendant Lu's sporadic presence in New York, visiting her children a few times a year, is not sufficient to establish general jurisdiction over Defendant Lu. (Lu Decl., at 1–2.) Defendant Lu does not maintain an office in New York, and does not own an interest in any business in New York. (*Id.*) Lu is not a member of the Jensen Law Firm, or of Strategic Alliance International Corporation. (*Id.*) Plaintiff's conclusory statement to the contrary that "Defendant Lu interoperates her securities sale business with her husband in New York" is insufficient to establish that fact as it is not supported by any specific facts or evidence, and Lu denies such in her declaration.

The Declaration of Jainping Su ("Su Decl."), submitted in support of Plaintiff's assertion of jurisdiction over Lu, is also insufficient to support a finding of general jurisdiction over Lu. Jianping Su ("Su") met with Lu and Jensen on various occasions between 2010 and 2014. (Su Decl. ¶¶ 7–8.) Specifically, Su states that he met with Lu "in person in Flushing, New York no less than 15 different times" from 2010 through 2014, and that Lu was present in person in New York for those meetings. (*Id.*) Su was retained to introduce individuals to Lu and Jensen for the EB-5 investment program. (*Id.*) Although relevant to the analysis, the allegations in Su's declaration are insufficient to support a finding of jurisdiction. Alleged attendance at sporadic meetings in New York is not sufficient to establish general jurisdiction over Lu. *Estate of Ungar*

*v. Palestinian Auth.*, 400 F. Supp 541, 550 (S.D.N.Y. 2005 (quoting *Miller v. Calotychos*, 303

F. Supp 2d 420, 428 (S.D.N.Y. 2004)) ("occasional or casual presence or isolated transactions do

not suffice" to support general jurisdiction)); *see also Landoil Res. Corp. v. Alexander &*

*Alexander Servs., Inc.*, 918 F.2d 1039, 1045 (2d Cir. 1990) (finding that thirteen visits over

eighteen months was insufficient for general jurisdiction); *Hoffritz For Cutlery v. Amajac, Ltd.*,

763 F.2d 55, 57–60 (2d Cir. 1985) (holding that fifty-four visits over ten years was insufficient

for personal jurisdiction under section 301); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film*

*und Funk KG*, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) (finding that four or five visits per year

was insufficient to establish personal jurisdiction); *New World Capital Corp. v. Poole Truck*

*Line, Inc.,* 612 F.Supp 166, 171–72 (S.D.N.Y. 1985) (holding that eight visits over four years

was insufficient to establish personal jurisdiction).

      Even when the approximately 15 meetings are considered with Lu's alleged employment

with the Jensen Law Firm—as evidenced according to Plaintiff by Lu's discontinued email

address with the firm's predecessor before 2010 (Am. Compl. ¶ 44)—the meetings are

insufficient to establish general jurisdiction for at least three reasons.[11]  First, the fact that Lu

used an email address of the firm's predecessor before 2010 deserves no weight for purposes of

establishing general jurisdiction as it does not demonstrate substantial or continuous contact with

New York.  Second, employment in a company domiciled in a forum does not create jurisdiction

over the individual employees in that forum.  *Family Internet, Inc., v. Cybernex, Inc.*, No. 98

Civ. 0637(RWS), 1999 WL 796177, *4 (S.D.N.Y. Oct. 6, 1999) (holding that corporate officers

and shareholders are not subject to general jurisdiction merely by the fact that the corporation is

---

[11] Although Xue alleges that Lu was a principal and officer of Strategic Alliance, (Am. Compl. ¶¶ 14, 28, 40), she
fails to allege any facts to support this conclusory assertion.

subject to general jurisdiction in the forum).  Third, minimum contacts must be assessed at the

time the complaint is filed, and there are no facts alleged that would support finding continuous

and systematic general business contacts within the four years leading up to the filing of the

complaint, let alone at the time the complaint was filed.  *In re Terrorist Attacks on September 11,*

*2001*, 714 F.3d 659, 674 (2d Cir. 2013) (finding that minimum contacts with the forum for

general jurisdiction are assessed "at the time the initial complaint was filed.")

In addition, exercising general jurisdiction over Lu does not "comport with constitutional

due process principles."  *Licci ex rel. Licci v. Lebanese Canaditan Bank, SAL*, 673 F.3d 50, 60

(2d Cir. 2012).

> General jurisdiction over an individual comports with due process in the forum
> where he is "at home," meaning the place of "domicile."  Owning property in a
> forum does not alone establish domicile.  One may have more than one residence
> in different parts of this country or the world, but a person may have only one
> domicile.  In an "exceptional case," an individual's contacts with a forum might be
> so extensive as to support general jurisdiction notwithstanding domicile elsewhere,
> but the Second Circuit has yet to find such a case."

*Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (internal citations and quotation marks omitted).

"Domicile is established initially at birth and is presumed to continue in the same place, absent

sufficient evidence of a change.  To effect a change of domicile, 'two things are indispensable:

First, residence in a new [domicile]; and, second, the intention to remain there.  The change

cannot be made, except *facto et animo*.  Both are alike necessary.  Either without the other is

insufficient.'"  *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*,

157 F.3d 945, 948 (2d Cir. 1998)).  In other words, if a person is domiciled in a particular

location, that location remains his domicile "whenever he is absent" so long as "he has the

intention of returning."  *Linardos*, 157 F.3d at 948 (internal citation omitted).  "In determining

domicile . . . courts consider factors including voting registration, employment, current

residence, location of real and personal property, location of spouse and family, driver's license, automobile registration, tax payment and addresses, and location of a person's bank account and physician." *Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 697 (S.D.N.Y. 2013). "Courts also consider whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Kennedy v. Trs. of Testamentary Trust of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (internal quotations marks and citations omitted). "No single factor is determinative," rather courts consider the totality of the evidence before them. *Id.*

Here, a finding of general jurisdiction over Defendant Lu would not "comport with constitutional due process principles." *Licci*, 673 F.3d at 60. Defendant Lu is resident and domiciled in China. She has lived in China for ten years, and there is no indication that she intends to move back to New York. (Lu Decl. ¶¶ 1-2.) Defendant Lu has "partial interest in several passive investments in real estate properties located in New York," and visits her children who reside in New York approximately three times a year. (*Id.*) With regard to certain of the business entities purportedly located in New York referenced in the Complaint and/or Amended Complaint, Lu states that (1) she does not own, operate, and is not affiliated with the Jensen Law Firm, (2) she is not a founder of, does not own or operate, and is not otherwise affiliated with Jensen & Jensen Development (USA) Inc., and (3) she is not a principal or officer of Strategic Alliance. (Id. ¶¶ 3-6.) Plaintiff fails to rebut these assertions. These New York contacts are not sufficient to make Lu "at home" in the forum and establish domicile in New York, and—as discussed above—Lu's alleged contacts are not "so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *Reich*, 858 F.3d at 63 (finding that

there is no general jurisdiction over a Defendant who owns an apartment in New York, but spent fewer than 5% of nights in New York during a 31-month period.)  Accordingly, Plaintiff has failed to establish that this court has general personal jurisdiction over Defendant Lu.

Plaintiff has also failed to establish that this court has specific jurisdiction over Defendant Lu.  To establish specific jurisdiction under N.Y. C.P.L.R. § 302, the court must "focus on the relationship of the defendant, the forum, and the defendant['s] suit-related conduct" to evaluate personal jurisdiction.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016). Plaintiff cites to § 302(a)(2) for specific jurisdiction, alleging jurisdiction under a theory of conspiracy jurisdiction.  (Pl. Mem. 8).[12]  To properly allege conspiracy jurisdiction under § 302(a)(2) the Plaintiff must show that as part of the relationship between the out-of-state defendant and the conspiracy, the co-conspirators mast have "acted at the behest of or on behalf of, or under the control of the out-of-state conspirator[]."  *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 170 (S.D.N.Y 2014). There is no evidence that Jensen or the Jensen Law Firm were taking actions "at the behest of or on behalf of, or under the control" of Lu.

Plaintiff also argues more broadly that a "court can exercise jurisdiction over a nondomiciliary who transacts any business in New York if the plaintiff's claims arise from the transaction of such business."  (Pl. Mem. 6.)  Plaintiff fails to cite to any additional evidence that Defendant Lu was in New York or conducted business in New York while working with Xue. The facts alleged in the Su declaration are immaterial for specific jurisdiction analysis, as Su does not allege that these meetings Lu attended in New York were related to Plaintiff Xue.  (*See* Su Decl.)  Furthermore, Plaintiff's allegations that Defendant Lu was in New York for phone

---

[12] "Pl. Mem." refers to Plaintiff's Opposition to Defendants' Motions to Dismiss the Amended Complaint.  (Doc. 34.)

calls with the Plaintiff in 2014 and 2015 is unsupported by anything other than Plaintiff's allegation, and rebutted by Defendant Lu's declaration. (Lu Decl. ¶ 8.) Finally, Xue cites to a "securities purchase agreement" countersigned by Defendant Lu as evidence that Lu was "providing legal services" to Xue. (Am. Compl. ¶ 47.) However, the contract at issue— apparently the Subscription Agreement—was signed by Lu as a witness, not as a party, (Lu Decl. ¶ 9, Ex. 1 at 4), and was signed in China, not in New York. (*Id.*)

Because the constitutional test for specific personal jurisdiction also requires Plaintiff's claims to "aris[e] out of or relate[e] to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 414 & n. 8 (1984) (internal quotation marks omitted), and because "New York law has relied significantly on due process cases in developing its jurisprudence under its long-arm statute," *Best Van Lines, Inc*., 490 F.3d at 255, I conclude, consistent with the above, that Plaintiff's allegations are insufficient to satisfy the Due Process clause's minimum contacts test. Accordingly, Defendant Lu's motion to dismiss for lack of personal jurisdiction is GRANTED.[13]

## IV.  Claims against Jensen and the Jensen Law Firm

### A.  *Legal Standard*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[13] Since I lack jurisdiction over Lu, I do not consider her motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (internal quotation marks omitted). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

At the motion to dismiss stage, dismissal of a complaint on the grounds that the statute of limitations has expired is appropriate only if the "complaint clearly shows the claim is out of time." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer

motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.") (internal quotation marks omitted).

### B. *Discussion*

#### 1. **Legal Malpractice**

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitation." *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998).[14]   The statute of limitations for legal malpractice in New York is three years.  N.Y. C.P.L.R. § 214(6).  "Under New York law, a malpractice action accrues when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *Bastys v. Rothschild*, 154 F. App'x 260, 262 (2d Cir. 2005) (internal quotation marks omitted).

Plaintiff's cause of action for legal malpractice is time barred by the three-year statute of limitations for legal malpractice in New York, as Jensen and the Jensen Law Firm did not provide legal services to Xue within three years of the filing of the Complaint.  Jensen and the Jensen Law Firm's alleged representation of Plaintiff began in 2010 when Defendants helped Xue partake in the EB-5 program, and helped her prepare a Form I-526, which was eventually submitted by attorney Martin Lawler in February, 2011.  (Am. Compl. ¶¶ 44–48.)  The representation continued in 2014 with the filing of a Form I-829 application for the removal of conditions on Plaintiff's green card.  (*Id.*)  Plaintiff claims—without identifying allegations in

---

[14] In addressing the various causes of action both parties cite to New York law, without addressing whether New York law is applicable.  "When sitting in diversity jurisdiction and determining New York state law claims, we must apply the law of New York as interpreted by the New York Court of Appeals." *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) (internal quotation marks omitted)).  By assuming New York law controls in their briefs, the parties have given "implied consent . . . []sufficient to establish choice of law." *Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippets-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).  Accordingly, I find that New York Law is applicable to Plaintiff's claims.

the Amended Complaint or evidence in support—that Jensen and the Jensen Law Firm's

representation continued through March 2016.  (*See* Am. Compl. ¶¶ 3, 49.)  Plaintiff does not

state that Jensen or the Jensen Law Firm did anything relating to the January 2016 request for

supplemental evidence beyond having filed the original Form I-829 in 2014.  Plaintiffs

conclusory assertion that Jensen and the Jensen Law Firm continued to represent her through

March 2016 is belied by her own allegations.  Specifically, Plaintiff states that with regard to the

request for supplemental evidence made by the USCIS in January 2016, she "was ultimately

required to obtain alternative counsel to complete the response."  (*Id.* ¶ 48.)  Plaintiff filed the

Complaint on February 25, 2019, more than three years after Defendants are alleged to have

performed legal work on her behalf.  Accordingly, Plaintiff's cause of action for legal

malpractice is time barred.

## 2.   Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty is similarly time barred.  In New York,

"[b]reach of fiduciary duty claims that seek money damages only are subject to a three-year

statute of limitations."  *Murphy v. Moritz*, 751 F. App'x 28, 30 (2d Cir. 2018) (citing *IDT Corp.*

*v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 139 (2009)).  Here again, as with

Plaintiff's legal malpractice claim, Plaintiff asserts— without identifying allegations in the

Amended Complaint or evidence in support—that she was represented by Jensen and the Jensen

Law Firm through March 2016.  (Am. Compl. ¶ 49; Pl. Mem. 15.)  Plaintiff's allegations that

Jensen and the Jensen Law Firm failed to advise her that they were not qualified to serve as nor

registered as financial-advisors and their alleged failure to disclose conflicts of interest, (Am.

Compl. ¶¶ 14, 15, 28, 31, 38), all occurred prior to her investment in 2011.  Plaintiff does not

allege any specific actions taken by Jensen and the Jensen Law Firm within the three years prior

to commencing this lawsuit, let alone actions which would constitute a breach of a fiduciary relationship.  Accordingly, Plaintiff's cause of action for breach of fiduciary duty is time barred.

### 3.  Fraud and Fraudulent Concealment

Plaintiff failed to properly plead a claim for fraud or fraudulent concealment.  Rule 9(b) of the Federal Rules of Civil Procedure provides that a party alleging fraud must "state with particularity the circumstances constituting fraud."   Fed. R. Civ. P. 9(b).  Specifically, when the fraud is premised on affirmative misstatements, the pleading must:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).  When the fraud is premised on omissions, such that the plaintiff "is unable to specify the time and place because no act occurred," the complaint must still allege:  "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 440 (S.D.N.Y. 2019) (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 434 (S.D.N.Y. 2010).

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed R. Civ. P. 9(b), "this leeway is not a license to base claims of fraud on speculation and conclusory allegations," *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks omitted).

Plaintiff's claim that Defendants Jensen and the Jensen Law Firm acted as unregistered broker dealers is not pled with sufficient particularity or specificity for a fraud claim. Plaintiff does not describe any interaction, document, or communication in which Jensen or the Jensen Law Firm made representations that they were registered broker dealers or that they were acting in that capacity. Despite amending her complaint, Plaintiff's allegations continue to merely state that Defendants served as "unregistered broker-dealers and financial advisors . . . in connection with, and in effecting her purchase of the SMS/ALTe securities," (Am. Compl. ¶ 12; *see e.g.*, ¶¶ 13, 15, 52, 55, 56, 60), and that Defendants gave her bad "financial advice" regarding her investment, (*see e.g.*, ¶¶ 52, 91). Conclusory statements that merely recite the elements of a cause of action, such as Plaintiff's comments that Jensen and the Jensen Law Firm made "material misrepresentations," and that Plaintiff "reasonably relied" on those misrepresentations are insufficient to properly plead a cause of action. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Plaintiff also maintains that Jensen and the Jensen Law Firm made material misrepresentations through marketing materials which included false statements regarding the financial status and health of ALTe. (Am. Compl. ¶ 38.) However, these materials were created and distributed by the Green Detroit Regional Center, not by Jensen or the Jensen Law Firm, (*see* Xue Decl. Exh. 1, Doc. 37-1), and Plaintiff does not allege facts sufficient to demonstrate that Jensen or the Jensen Law Firm were involved in the preparation of these materials. Moreover, Plaintiff fails to demonstrate that any of these statements were false or misleading, other than her conclusory statement that they were not true. Plaintiff does not cite to any

financial statements, company documents, or any other evidence to support her claim that the statements made in the materials were false.

Plaintiff also does not cite to any evidence that Jensen or the Jensen Law Firm made any of the alleged misrepresentations with fraudulent intent. Plaintiff has not alleged any facts to show that defendants had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Eternity Glob. Master Fund, Ltd.,* 375 F.3d at 187. Without further specificity regarding Jensen or the Jensen Law Firm's alleged false representations to Plaintiff, Plaintiff's fraud claims fail.

Plaintiff's claim that Jensen represented in a letter "that the project was to provide a 2% annual interest" is also insufficient, since Jensen did not guarantee the performance of SMS.[15] Defendant Jensen never guaranteed the performance of the project. The letter Xue cites to support the allegation that Defendants represented the project would generate a 2% return states "SMS forecasts up to 2 percent return per year for five years. . ."[16] (Xue Decl. Ex. 2, Doc. 37-2.) This letter does not guarantee 2% interest, and there are no specific facts alleged that Jensen did not reasonably believe the statement. Rather the letter predicts an "up to 2 percent" return on the capital investment. This prediction is insufficient for a claim of securities fraud.

Plaintiff's fraud claims against Jensen and the Jensen Law Firm are also barred by the statute of limitations.

Under New York law, a claim for fraud must be commenced either within six years

---

[15] I note that certain of the allegations in the Amended Complaint appear to suggest the possibility of securities fraud; however, Plaintiff has not alleged a securities fraud cause of action. Even if Plaintiff had made a securities fraud claim, her claim would still fail. In a claim of securities fraud, "[p]rojections of future performance may be actionable . . . if they are worded as guarantees or supported by specific facts or if the speaker does not reasonably believe them." *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 34, (S.D.N.Y. 2004) (citing *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)).

[16] "Forecast" is defined as "to calculate or predict (some future event or condition) usually as a result of study and analysis of available pertinent data" and "to indicate as likely to occur." *Forecast*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/forecast?src=search-dict-box (last visited Nov. 5, 2020).

> from the commission of the fraud or within two years from the date that the fraud was discovered, or could reasonably have been discovered, whichever is later. The plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action.

*Guilbert v. Gardner*, 480 F.3d 140, 147 (2d. Cir. 2007) (internal citations omitted). According to the Amended Complaint, the alleged misrepresentations were made by Jensen in 2010, prior to Xue's investment. (*See e.g.*, Am. Compl. ¶¶ 33, 38, 39.) Plaintiff claims that the "Defendants reiterated this positive information" in subsequent years, (*id.* ¶ 39), but does not state when and under what circumstances the "positive information" was repeated. Therefore, the statements made by Jensen and the Jensen Law Firm were made in 2010, more than six years before the commencement of this action.

Plaintiff points to the Form I-829 filing in 2014, which she claims also misrepresented the viability of ALTe. (Am. Compl. ¶ 42.) These alleged representations, which were made to the Government, not to Xue, could not have induced Plaintiff into making the investment, as she had already made her investment in 2010. The alleged representations also could not have been relied upon by Xue, as they were made to a third party, not to Xue. *Pasternick v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016) (deciding the issue certified by the Second Circuit that "a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant" and declining to "extend the reliance element of fraud to include a claim based on the reliance of a third party [on that information] rather than plaintiff."); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 412 F. Supp. 3d 392, 410–11 (S.D.N.Y. 2019) (finding that "for Plaintiffs to have reasonably relied on statements communicated through a third party, Defendants must have intended for the misrepresentations to be communicated by the third party [] to Plaintiffs"). Plaintiff, again, also does not point to any allegations in the Amended Complaint that would show that the information in the Form I-829 was fraudulent or misleading.

Plaintiff has not carried her burden of showing that the fraud could not have been discovered before the two-year period prior to filing the lawsuit.  *See Guilbert*, 480 F.3d at 147. Plaintiff argues—without explanation or reference to supporting allegations in the Amended Complaint—that she did not and could not have reasonably discovered the fraud until 2019. Upon making her investment, Xue "became a limited partner of SMS, with a five-percent partnership interest."  (Am. Compl. ¶ 37.)  Xue does not explain why, as a limited partner with a partnership interest, she could not have discovered the fraud prior to 2019.  In addition, Defendant points out—and Plaintiff references in the Amended Complaint—that the Securities and Exchange Commission ("SEC") issued an alert in 2013 concerning EB-5 investment scams. (*Id.* ¶ 20).  The alert includes warning signs such as "overly consistent high investment returns" and "[l]ayers of companies run by the same individuals."  (*Id.*)  Xue alleges in her Amended Complaint that Jensen acted as both an attorney as well as Vice President of SMS and a broker-dealer, (*id.* ¶ 13), and that Jensen wrote a letter promising annual 2% return on investment, (*id.* ¶ 33), both of which fall under the warning signs the SEC identified in its alert, (*id.* ¶ 20).  Xue does not explain why the SEC alert could not have put her on notice of the alleged fraud in 2013.[17]  Plaintiff puts forward no facts that explain why the alleged fraud could not have been discovered within two years of filing the lawsuit.  Accordingly, Plaintiff has not met her burden of showing that the fraud was not discoverable, and the statute of limitations has run on Plaintiff's fraud claims.

---

[17] I note that the Second Circuit has held that a finding of whether Plaintiff had sufficient facts to be placed on inquiry notice is often inappropriate on a motion to dismiss.  *Staehr*, 547 F.3d at 412.  My holding here should not be construed as a finding that Plaintiff was on inquiry notice from the SEC alert, and I make no such finding. Rather, the existence of the alert, and Plaintiff's admitted knowledge of it, (Am. Compl. ¶20), is further evidence that Plaintiff has not carried her burden of showing that the fraud could not have been discovered within the two years prior to commencing the action.

### 4.  Negligent Misrepresentation

Plaintiff's cause of action for negligent misrepresentation is similarly dismissed as Plaintiff's allegations are conclusory and merely state the elements of negligent misrepresentation with conclusory statements without providing any specific instances of alleged negligence.  "[A]lthough a court must accept as true all of the allegations contained in a complaint . . . [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Harris*, 572 F.3d at 72 (internal quotation marks omitted).

Furthermore, Plaintiff's cause of action for negligent misrepresentation, as it relates to the actions of Defendants Jensen and the Jensen Law Firm as attorneys, must also be dismissed as duplicative of Plaintiff's claim for legal malpractice.  "Under New York law, where claims of . . . negligent misrepresentation . . . [is] premised on the same facts and seek[s] identical relief as a claim for legal malpractice, [that] claim[] [is] duplicative and must be dismissed."  *Joyce v. Thompson Wigdor & Gilly, LLP*, No. 06 Civ. 15315(RLC)(GWG), 2008 WL 2329227, *14 (S.D.N.Y. June 3, 2008); *Amadasu v. Ngati*, No. 05CV2585(JFB)(LB), 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (finding that plaintiff's claims for negligent misrepresentation, "merge[s] into plaintiff's legal malpractice claim" as "redundant" because they "arise from the same conduct-the defendant attorneys' alleged breach of [his] duties").  Xue's claim for negligent misrepresentation as it relates to Jensen and the Jensen Law Firm's legal representation, is based on the same facts as her claim for legal malpractice, and seeks the same monetary relief.  Accordingly, the negligent misrepresentation claim must be dismissed as duplicative.

### 5.  Civil Conspiracy

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102 (1986)).  However, a "civil conspiracy may be alleged for the purpose of showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interest, the acts of one may be imputed to the others." *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011) (internal quotation marks omitted).  "To state a claim for civil conspiracy, a plaintiff must demonstrate the primary tort, plus the following four elements:  (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) (internal quotation marks omitted).  Since civil conspiracy must be derivative of an underlying tort, a civil conspiracy claim "should be dismissed if the underlying tort claim either is not adequately pleaded or has been dismissed." *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 CIV. 9623(RWS), 2007 WL 1040809, at *25 (S.D.N.Y. Apr. 4, 2007) (citing *Kirch*, 449 F.3d at 401), *aff'd sub nom. Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009).  "Additionally, where the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint," the conspiracy claim must be dismissed as duplicative.  *Id.* at *26; *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-3723 (RJS), 2016 WL 5719749, at *7 (S.D.N.Y. Sept. 29, 2016); *accord Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005).

Plaintiff's conspiracy claim must be dismissed for two reasons.  First, since Plaintiff's
civil conspiracy claim is derivative of her dismissed fraud claims, the civil conspiracy claim
must also be dismissed.  *Briarpatch*, 2007 WL 1040809, at *25.  Second, because Plaintiff
"add[s] no new allegations distinct from those underlying [her] fraud [claim]," her civil
conspiracy claim must be "dismissed as duplicative" of her fraud claims.  *Loreley Fin.*, 2016 WL
5719749, at *7; *see also 380544 Can., Inc. v. Aspen Tech., Inc.*, 633 F. Supp. 2d 15, 36
(S.D.N.Y. 2009) (dismissing conspiracy claim as duplicative of fraud claim).

### 6.  Unjust Enrichment

Plaintiff fails to adequately plead a claim for unjust enrichment, as Plaintiff fails to allege
how Jensen and the Jensen Law Firm were enriched at her expense.  "The basic elements of an
unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at
plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to
retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373
F.3d 296, 306 (2d Cir. 2004).  Plaintiff made a $500,000 investment in ALTe, and paid a
$30,000 "management fee" to GDRC.  (Am. Compl. ¶¶ 24, 27, 35.)  Plaintiff did not make these
payments to Jensen or the Jensen Law Firm.  Plaintiff states that Jensen and the Jensen Law Firm
received commission for the investment, but does not support that allegation, while
acknowledging that her payments were made to GDRC not to Jensen of the Jensen Law Firm.
(*See id*.)  Plaintiff has, therefore, failed to properly plead a cause of action for unjust enrichment.

Furthermore, Plaintiff's unjust enrichment claim is also barred because another adequate
remedy at law exists.  "Unjust enrichment is an equitable claim that is unavailable where an
adequate remedy at law exists."  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400
F. App'x 611, 613 (2d Cir. 2010).  Plaintiff's remedy lies in her fraud claims, and an unjust

enrichment claim is not a substitute for her failure to properly plead her fraud claims.  *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 291 (S.D.N.Y. 2014) (holding that "to the extent that Plaintiffs' other claims succeed, the unjust enrichment claim is duplicative, and if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.") (internal quotation marks omitted).

Finally, unjust enrichment "is an obligation the law creates in the absence of any agreement."  *Beth Isr. Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J. Inc.*, 448 F.3d 573, 586–87, (2d Cir. 2006) (internal quotation marks omitted).  Here, Plaintiff states that she "did retain" Jensen and the Jensen Law Firm, and repeatedly states that Defendant represented her as her attorney.  (*See* Am. Compl. ¶¶ 41–42, 45–46, 118.)  Because Plaintiff cannot bring an unjust enrichment claim when there is an existing agreement, Plaintiff's cause of action for unjust enrichment is dismissed.

## V.     Conclusion

Because I find that this court does not have personal jurisdiction over Defendant Lu, Defendant Lu's motion to dismiss is GRANTED.  Plaintiff's remaining causes of action are also dismissed as her claims against Jensen and the Jensen Law Firm for legal malpractice and breach of fiduciary duty are time barred, and Plaintiff has not sufficiently pled her claims against these defendants for fraud and fraudulent concealment, negligent representation, civil conspiracy, or unjust enrichment.  Accordingly, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED.

The Clerk's Office is respectfully directed to terminate the motions at Documents 24 and 27, and terminate the case.

SO ORDERED.

Dated: November 19, 2020
      New York, New York

Vernon S. Broderick
United States District Judge